UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NAUTILUS INSURANCE COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Civil Action No.: |
| ) | |
| HB CONSTRUCTION CORP., ) | |
| WESTERN WORLD INSURANCE COMPANY, ) | |
| and MTC d/b/a MTC BUILDERS, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

### Introduction

1.      This is an action for declaratory relief pursuant to 28 U.S.C. § 2201 and Rule 57

of the Federal Rules of Civil Procedure to determine the parties' rights, obligations, and

liabilities under policies of insurance issued by Nautilus Insurance Company ("Nautilus") and

Western World Insurance Company ("WWIC") to HB Construction Corp. ("HB").  This action

specifically seeks a determination as to whether WWIC is obligated under its commercial

general liability policy issued to HB, to defend HB, and whether Nautilus is obligated under

certain commercial general liability policies issued to HB, to indemnify HB, in connection with a

pending action entitled *Fairmount Terrace v. Timothy A. Burke Architects and MTC Builders,*

*Inc., and MTC Builders, Inc. v. HB Construction Corp*., Civil Action No. SUCV 2012-02968-H,

filed in the Massachusetts Superior Court for Suffolk County (the "Underlying Action").

2.      This Court has original jurisdiction over this action by reason of diversity of

citizenship between Nautilus and the defendants pursuant to the provisions of Title 28 U.S.C. §

1332.  Upon information and belief, given the nature of the underlying claims and alleged damages, the amount in controversy exceeds $75,000.

3.      Pursuant to 28 U.S.C. § 1391, venue is proper because the defendants are subject to personal jurisdiction in the District of Massachusetts and without a declaration of rights of the parties, Nautilus will be at risk to suffer damages within Massachusetts.

**<u>Parties</u>**

4.      The Plaintiff, Nautilus, is an Arizona corporation with a principal place of business at 7233 E. Butherus Drive, Scottsdale, Arizona. Nautilus is an approved surplus lines insurer in the Commonwealth of Massachusetts.

5.      The defendant, HB, is a Massachusetts corporation with a principal place of business at 205 Ocean Street, Lynn, Massachusetts.

6.      The defendant, WWIC, is a foreign corporation, incorporated in the state of New Hampshire, with its principal place of business located at 400 Parson's Pond Drive, Franklin Lakes, New Jersey. Western World is registered with the Massachusetts Commissioner of Insurance to do business in Massachusetts.

7.      Upon information and belief, the defendant, MTC, is an individual doing business as MTC Builders with a principal place of business at 1381 B River Street, Hyde Park, Massachusetts and is named in this Action as an interested party and to be bound by the determinations made herein.

## Facts

### The Underlying Action

8.      On August 6, 2012, Fairmount Terrance, Inc. ("Fairmount") instituted the

Underlying Action against Timothy Burke Architecture, Inc. ("Timothy Burke") and MTC.

(Exhibit A.)

9.      Fairmount alleges that it is the owner of a condominium building located at 81-87

Fairmount Avenue, Hyde Park, Massachusetts (the "Building") that was constructed in 2007 and

2008, and for which a Certificate of Occupancy was issued in January 2008.

10.     Fairmount alleges that it retained the services of MTC to act as the project

manager.

11.     Fairmount alleges that starting in May 2011 John Button, the manager of

Fairmount, began to notice water manifesting on the exterior of the stucco walls of the Building.

12.     Fairmount alleges that on further investigation water had been infiltrating the

stucco system for a number of years since the Building was built.

13.     Fairmount alleges the water infiltration caused deterioration to the wall sheathing

and insulation within the wall cavity that ultimately led to mold damage to the perimeter walls.

14.     Fairmount alleges that MTC was negligent and that it breached its contract.

15.     In May 2015 Nautilus received notice that MTC filed a Third-Party Complaint

against HB and others on or about November 6, 2012, and that HB failed to respond.

16.     MTC alleges that it had been sued by Fairmount, that MTC contracted with HB to

be the general contractor for construction of the Building, and that HB was responsible for the

framing of the walls of the Building, interior partitions and exterior openings, internal soffits,

and installation of the windows.   (Exhibit B).

17.     MTC alleges that HB was negligent in the performance of its contractual obligations causing water or vapor seepage into the walls of the Building, which was the proximate cause of Fairmount's damages.

18.     MTC seeks contribution and common law indemnity from HB.

**Western World's Denial**

19.     Upon information and belief, HB placed Western World on notice of the Third-Party Complaint against it in the Underlying Action and requested coverage.

20.     WWIC issued HB insurance policy number NPP1278870 for the period June 2, 2010 to June 2, 2011 ("WWIC Policy").  (Exhibit C.)

21.     The limits of liability of the WWIC Policy are $1,000,000 each occurrence/$2,000,000 in the aggregate.  The aggregate for completed operations is $1,000,000.

22.     By letter dated December 20, 2012, WWIC denied any duty to defend or indemnify HB due to one or more of the following: (1) the Complaint did not assert a claim for "property damage" that occurred within the effective policy period; (2) the "known injury or damage" exclusion; (3) the "continuous and progressive injury or damage" exclusion; (4) the "fungi or bacteria" exclusion (5) the EIFS exclusion; and (6) exclusions l, j, and m of the WWIC Policy (the "Denial Letter").  (Exhibit D.)

23.     The Denial Letter stated that WWIC would continue to investigate the claim and reserved its rights to supplement its coverage position.

24.     Upon information and belief, WWIC did not continue to investigate the claim.

**The WWIC Policy**

25.     The WWIC Policy's Insuring Agreement under "Coverage A Bodily Injury and Property Damage" provides, in relevant part:

>   **a.**   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply . . . .

>   **b.**   This insurance applies to "bodily injury" and "property damage" only if:
>   **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; [and]
>   **(2)** The "bodily injury" or "property damage" occurs during the policy period . . . .

26.     The WWIC Policy defines "property damage" as:

>   **a.**   Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

>   **b.**   Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

27.     The WWIC Policy defines "occurrence" as an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

28.     In its Denial Letter, WWIC advised HB that to the extent the pleadings in the Underlying Action allege "property damage," "it appears that the alleged 'property damage' was caused, in part, by an 'occurrence' as that term has been construed by Massachusetts courts."

29.     In its Denial Letter, WWIC advised HB that "the claims concerning [Fairmount's] damages fall within the [WWIC] policy's definition of 'property damage'."

30.     In its Denial Letter, WWIC nevertheless took the position that all the "property damage" alleged in the pleadings in the Underlying Action occurred outside the WWIC Policy's

policy period of June 2, 2010 to September 4, 2010 because the Complaint alleged that the damage first manifested itself in May 2011.

31.     In its Denial Letter, WWIC advised HB that the "property damage" occurred well before the WWIC Policy incepted.

32.     The WWIC Policy contains a "Known Injury or Damage Exclusion" that provides:

> This insurance does not apply to . . . "property damage" which first occurs before the inception date of the policy but continues to occur during the policy period if such . . . "property damage" is known to any insured prior to the inception date of this policy.

33.     The WWIC Policy contains a "Continuous and Progressive Injury or Damage Exclusion" that provides:

> This insurance does not apply to . . . "property damage" which first occurs before the inception date of the policy regardless of whether such . . . "property damage" continues or becomes progressively worse during the policy period.

34.     The Complaint filed in the Underlying Action is silent as to when "property damage" actually occurred prior to an allegation that water was noticed on the exterior of the stucco in or about May 2011 and subsequent investigation discovered damage to the sheathing and wall cavity.

### Nautilus's Partial Disclaimer and Reservation of Rights

35.     On May 7, 2015, Fairmount wrote to Nautilus and presented a claim with respect to policy number NC560912 for damages resulting from allegedly defective work performed by HB during the construction of the Building, and notified Nautilus that a Third-Party Complaint had been filed against HB. (Exhibit E.)

36.     Nautilus issued three commercial lines policies to HB (collectively the "Nautilus Policies").

37.     The first policy bears policy number NC560912 and was in effect from May 7, 2006 to May 7, 2007, with limits of liability of $1,000,000 each occurrence and $2,000,000 in the aggregate with a $500 per "property damage" claim deductible (the "2006-07 Nautilus Policy").  (Exhibit F.)

38.     The second policy bears policy number NC675638 and was in effect from May 17, 2007 to May 17, 2008 with limits of liability of $1,000,000 each occurrence and $2,000,000 in the aggregate with a $500 per "property damage" claim deductible (the "2007-08 Nautilus Policy").  (Exhibit G.)

39.     The third policy bears policy number NC782236 and was in effect from May 17, 2008 to May 17, 2009 with limits of liability of $1,000,000 each occurrence and $2,000,000 in the aggregate with a $1000 per "property damage" claim deductible (the "2008-09 Nautilus Policy"). (Exhibit H.)

40.     By letter dated July 16, 2015, Nautilus denied coverage under the 2006-07 Nautilus Policy based on *inter alia* the ongoing operations exclusion, but agreed to provide a defense to HB for the Third-Party Complaint subject to a reservation of rights under the 2007-08 Nautilus Policy and 2008-09 Nautilus Policy.  (Exhibit I.)

41.     Among other things, Nautilus reserved the right to withdraw from the defense on appropriate written notification if it became apparent that none of the damages being claimed by Fairmount were covered under the 2007-08 Nautilus Policy and 2008-09 Nautilus Policy.

42.     Nautilus assigned the law firm of Brody Hardoon Perkins & Kesten LLP to defend HB.

**The Nautilus Policies**

43.     The Nautilus Policies' Insuring Agreement under "Coverage A Bodily Injury and

Property Damage" provides, in relevant part,

>    **a.**   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply . . . .

>    **b.**   This insurance applies to "bodily injury" and "property damage" only if:
>    **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; [and]
>    **(2)** The "bodily injury" or "property damage" occurs during the policy period . . . .

44.     The Nautilus Policies define "property damage" as

>    **a.**   Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

>    **b.**   Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

45.     The Nautilus Policies define "occurrence" as an accident, including continuous or

repeated exposure to substantially the same general harmful conditions.

46.     The Nautilus Policies contain an exclusion j(5) that excludes coverage for

"property damage" to "that particular part of real property on which you or any contractors or

subcontractors working directly or indirectly on your behalf are performing operations, if the

'property damage' arises out of those operations."

47.     The Nautilus Policies contain an exclusion j(6) that excludes coverage for

"property damage" to "[t]hat particular part of any property that must be restored, repaired or

replaced because 'your work' was incorrectly performed on it," where the "property damage" is

not included in the "products-completed operations hazard."

48.    The Nautilus Policies define "Your work" as:

    **a.**  Means:
        **(1)** Work or operations performed by you or on your behalf; and
        **(2)** Materials, parts or equipment furnished in connection with such work or operations.
    **b.**  Includes:
        **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and
        **(2)** The providing of or failure to provide warnings or instructions.

49.    The Nautilus Policies define "products-completed operations hazard" as:

Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

    **(1)** Products that are still in your physical possession; or
    **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:
        **(a)** When all of the work called for in your contract has been completed.
        **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.
        **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

50.    The Nautilus Policies define "Your Product" as

    **a.**  Means:
        **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:
            **(a)**  You;
            **(b)**  Others trading under your name; or
            **(c)**  A person or organization whose business or assets you have acquired; and

        **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    **b**.  Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and
**(2)** The providing of or failure to provide warnings or instructions.

51.    The Nautilus Policies contain exclusion k that excludes coverage for "property

damage" to "your product" arising out of it or any part of it.

52.    The Nautilus Policies contain exclusion l that excludes coverage for "property

damage" to "your work" arising out of it or any part of it and included in the "products-

completed operation hazard."

53.    The Nautilus Policies contain exclusion m that excludes coverage for:

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:
**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

54.    The Nautilus Policies define "impaired property" to mean:

"Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

**a.** The repair, replacement, adjustment or removal of "your product" or "your work"; or
**b.** Your fulfilling the terms of the contract or agreement.

55.    The Nautilus Policies also contain conditions regarding duties in the event of a

suit that provide:

a.    You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

    (1)    How, when and where the "occurrence" or offense took place;
    (2)    The names and addresses of any injured persons and witnesses; and
    (3)    The nature and location of any injury or damage arising out of the "occurrence" or offense.

b.    If a claim is made or "suit" is brought against any insured, you must:

    (1)    Immediately record the specifics of the claim or "suit" and the date received; and
    (2)    Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c.    You and any other involved insured must:

    (1)    Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";
    (2)    Authorize us to obtain records and other information;
    (3)    Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and
    (4)    Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

56.    The 2007-08 Nautilus Policy and 2008-09 Nautilus Policy include Endorsement form L201 (06/06), Exclusion-Exterior Insulation and Finish System ("EIFS"), which provides:

A. This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:

1. The design, manufacture, construction, fabrication, preparation, distribution and sale, installation, application, maintenance or repair, including remodeling, service, correction or replacement of any "exterior insulation and finish system" (commonly referred to as synthetic stucco) or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashing, coatings, caulking or sealants in connection with such a system; or

11

2. "Your product" or "your work" with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system", or any substantially similar system, is used on the part of that structure containing that component, fixture or feature.

However, this exclusion does not apply to cementitious stucco consisting of portland cement, sand, lime, color and water.

B. Exclusion i. Damage To Your Work under Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury and Property Damage Liability is replaced by the following:

1. Damage To Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

C. The following definition is added to the Definitions Section:

"Exterior insulation and finish system" means a non-load bearing exterior cladding or finish system, and all component parts therein, used on any part of any structure, and consisting of:

1. A rigid or semi-rigid insulation board made of expanded polystyrene or other materials; and
2. The adhesive or mechanical fasteners used to attach the insulation board to the substrate; and
3. A reinforced or unreinforced base coat; and
4. A finish coat providing surface texture to which color may be added; and
5. Any flashing, caulking or sealant used with the system for any purpose.

57.    The 2007-08 Nautilus Policy includes Endorsement form L012 (03/06),

Exclusion-Contractors and Subcontractors, which provides, in relevant part:

This insurance does not apply to . . . "property damage" . . . arising out of work performed by contractors or subcontractors hired by or on behalf of any insured, or any insured's acts or omissions in connection with the general supervision of such work . . . [w]hether such liability is alleged to be direct or vicarious.

58.     The 2007-08 Nautilus Policy includes Endorsement form L062 (08/03),

Exclusion-Professional Services-Contractors, Engineers, Architects, Surveyors and Construction

Management, which provides:

> This insurance does not apply to . . . "property damage" . . . arising out of the rendering of or failure to render any professional services by you or on your behalf.  Professional services include:
>
> > (1) an error, omission, defect or deficiency in any test performed, or an evaluation, a consultation or advice given by or on behalf of any insured; and/or
> > (2) the reporting of or reliance upon any such test, evaluation, consultation or advice; and/or
> > (3) the preparing, approving, or failure to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders, designs or drawings and specifications; and/or
> > (4) Supervisory, inspection, quality control, architectural or engineering activities.

59.     The 2008-09 Nautilus Policy includes Endorsement form L219 (06/07),

Exclusion-Professional Services-Contractors, Engineers, Architects, Surveyors and Construction

Management, which provides:

> 1.     This insurance does not apply to . . . "property damage" . . . arising out of the rendering of or failure to render any professional services by you or on your behalf.
>
> 2.     Professional services include:
>
> > (a) An error, omission, defect or deficiency in any test performed; or
> > (b) Any evaluation, a consultation or advice; or
> > (c) The reporting of or reliance upon any such test, evaluation, consultation or advice; or
> > (d) The preparing, approving, or failure to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders, designs or drawings and specifications; or
> > (e) Supervisory, inspection, quality control, architectural or engineering activities.

60.     The 2007-08 Nautilus Policy includes Endorsement form S233 (08/01), Exclusion-Microorganism, Biological Organism, Bioaerosols or Organic Contaminants, which provides:

This insurance does not apply to:

1.     Liability, injury or damage of any kind, including but not limited to . . . "property damage" arising out of, related to, caused by or in any way connected with exposure to, presence of, formation of, existence of or actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of . . . mold, mildew, fungus . . . wet or dry rot . . . or any materials containing them at any time, regardless of the cause of growth, proliferation or secretion.

61.     The 2008-09 Nautilus Policy includes Endorsement form L241 (06/07), Exclusion-Microorganism, Biological, Organism, Bioaerosols or Organic Contaminants, which provides:

This insurance does not apply to:

1.     "[P]roperty damage" . . . arising out of, related to, caused by or in any way connected with exposure to, presence of, formation of, existence of or actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of . . . mold, mildew, fungus . . . wet or dry rot . . . or any materials containing them at any time, regardless of the cause of growth, proliferation or secretion.

62.     The 2007-08 Nautilus Policy includes Endorsement form S274 (09/05), Conditional Exclusion-Roofing Operations-Weather Related Property Damage, which provides:

This insurance does not apply to "property damage" for roofing operations conducted by you or on your behalf unless the following conditions are met:

(1)     You have taken the "appropriate" steps to determine any approaching adverse weather;

(2)     You have taken the "appropriate" steps to provide a temporary cover for an "open roof", which is able to withstand the normal elements; and

(3)     The temporary cover must be put in place if the roof is to be left unattended for more than four consecutive hours.

63.     The 2008-09 Nautilus Policy includes Endorsement form L280 (06/07),

Conditional Exclusion-Roofing Operations-Weather Related Property Damage, which provides:

Coverage only applies to liability arising out of work performed by or on behalf of any insured when:

1. "Appropriate" steps are taken to determine any approaching adverse weather;
2. "Appropriate" steps are taken to provide a temporary cover for an "open roof", which is able to withstand the influx of rain, snow, sleet, hail, ice, wind or any other weather-related condition; and
3. The temporary cover is properly secured to prevent "property damage" caused by the influx of rain, snow, sleet, hail, ice, wind or any other weather-related condition.

64.     The 2008-09 Nautilus Policy includes Endorsement form L288 (6/07), which

excludes coverage for "property damage" arising out of work performed by any subcontractors

unless such work is being performed specifically and solely for HB.

## COUNT I

65.     Nautilus incorporates by reference paragraphs 1 through 64 of the Complaint as

though fully set forth again herein.

66.     An actual controversy exists between Nautilus and WWIC as to whether WWIC

is obligated to defend HB with respect to the claims asserted in the Third-Party Complaint filed

in the Underlying Action.

67.     To the extent that the Complaint in the Underlying Action seeks damages because

of "property damage", it is silent as to when such "property damage" occurred.

68.     To the extent that the Complaint in the Underlying Action seeks damages because

of "property damage", such "property damage" at least potentially occurred during the policy

period of the WWIC Policy.

69.     The "Known Injury or Damage Exclusion" in the WWIC Policy does not apply to

preclude any duty to defend because the pleadings in the Underlying Action are silent as to

whether HB knew of the existence of "property damage" prior to the inception of the WWIC Policy.

70.     The "Continuous and Progressive Damage or Injury Exclusion" in the WWIC Policy does not apply to preclude any duty to defend because the Complaint in the Underlying Action is silent as to when any "property damage" first occurred.

71.     As the allegations of the Complaint are reasonably susceptible of an interpretation that "property damage" could have first occurred during WWIC's policy period, WWIC has a duty to defend HB.

72.     The allegations of the Complaint and Third-Party Complaint in the Underlying Action do not fall entirely within the scope of any other policy exclusion contained in the WWIC Policy.

73.     Because any "property damage" alleged in the Complaint may have occurred during the policy period of the WWIC Policy and the allegations in it, and in the Third-Party Complaint, do not fall entirely within the scope of any policy exclusion, WWIC has a duty to defend HB in the Underlying Action and wrongfully has declined to do so.

74.     Nautilus therefore is entitled to a declaration that WWIC is obligated to defend HB in connection with the claims asserted in the Third-Party Complaint on a co-primary basis.

## COUNT II

75.     Nautilus incorporates by reference paragraphs 1 through 74 of the Complaint as though fully set forth again herein.

76.     Because any "property damage" alleged in the Complaint may have occurred during the policy period of the WWIC Policy and the allegations in it, and in the Third-Party

Complaint, do not fall entirely within the scope of any policy exclusion, WWIC has a duty to defend HB in the Underlying Action and wrongfully has declined to do so.

77.     Nautilus has been defending HB in the Underlying Action since July 16, 2015, and has incurred attorneys' fees and other defense costs a portion of which should have been borne by WWIC had it fulfilled its obligation to defend HB.

78.     Because WWIC owes a duty to defend to HB in the Underlying Action, it is obligated to reimburse Nautilus for WWIC's share of the defense of HB that has been paid by Nautilus.

79.     Nautilus therefore is entitled to a money judgment in its favor in an amount to be proven at trial or otherwise in this action for WWIC's share of the defense of HB in the Underlying Action that to date has been paid by Nautilus.

## COUNT III

80.     Nautilus incorporates by reference paragraphs 1 through 79 of the Complaint as though fully set forth against herein.

81.     An actual controversy exists between Nautilus and HB as to whether Nautilus is obligated to indemnify HB with respect to the claims asserted in the Complaint and Third-Party Complaint filed in the Underlying Action.

82.     Some or all of the damages sought in the Complaint and Third-Party Complaint in the Underlying Action are not damages because of "property damage" caused by an "occurrence" as defined by the Nautilus Policies.

83.     Damages that are not because of "property damage" caused by an "occurrence" are not covered under the Nautilus Policies because such damages fall outside the scope of the Insuring Agreement of the Nautilus Policies.

84.     Nautilus therefore is entitled to a declaration that it is not obligated to indemnify HB under the Nautilus Policies for damages sought in the Underlying Action that are not damages because of "property damage" caused by an "occurrence" within the meaning of the policies.

## COUNT IV

85.     Nautilus incorporates by reference paragraphs 1 through 84 of the Complaint as though fully set forth again herein.

86.     To the extent that the Complaint in the Underlying Action seeks recovery of damages because of "property damage", some or all of the "property damage" occurred before or after the policy periods of the Nautilus Policies.

87.     Damages because of "property damage" that occurs before or after the policy periods of the Nautilus Policies is not covered under the Nautilus Policies as it falls outside the scope of the Insuring Agreement of the policies.

88.     Nautilus therefore is entitled to a declaration that it is not obligated to indemnify HB under the Nautilus Policies for damages because of "property damage" that did not occur during the policy periods of the Nautilus Policies.

## COUNT V

89.     Nautilus incorporates by reference paragraphs 1 through 88 of the Complaint as though fully set forth against herein.

90.     To the extent the Complaint in the Underlying Action seeks damages because of "property damage", some or all of the "property damage" may have been to real property that occurred while HB was performing operations on the Building.

91.     To the extent the Complaint in the Underlying Action seeks damages because of "property damage", some or all of the "property damage" may have been to that particular part of property that must be restored, repaired or replaced because HB's work was incorrectly performed on it and is not included in the "products-completed operations hazard" under the Nautilus Policies.

92.     Damages because of "property damage" to real property that occurred while HB was performing operations, and to that particular part of any property that must be restored, repaired or replaced because HB's work was incorrectly performed on it that is not included in the "products-completed operations hazard", fall entirely within the scope of exclusions j(5) and j(6) of the Nautilus Policies and so are not covered under the policies.

93.     Nautilus therefore is entitled to declaration that it is not obligated to indemnify HB under the Nautilus Policies for damages because of "property damage" that falls within the scope of exclusions j(5) and j(6) of the Nautilus Policies.

## COUNT VI

94.     Nautilus incorporates by reference paragraphs 1 through 93 of the Complaint as though fully set forth again herein.

95.     To the extent that the Complaint in the Underlying Action seeks damages because of "property damage", some or all of the "property damage" is to HB's product arising out of it or any part of it.

96.     To the extent that the Complaint in the Underlying Action seeks damages because of "property damage", some or all of the "property damage" is to HB's work arising out of it or any part of it and included within the "products-completed operation hazard" as defined in the Nautilus Policies.

97.     To the extent that the Complaint in the Underlying Action seeks damages because of "property damage", some or all of the "property damage" is to "impaired property" as defined in the Nautilus Policies.

98.     Damages because of "property damage" to HB product, work and/or "impaired property" as defined by the Nautilus Policies fall entirely within the scope of exclusions k, l, and/or m of the Nautilus Policies and so are not covered under the policies.

99.     Nautilus therefore is entitled to a declaration that it is not obligated to indemnify HB under the Nautilus Policies for damages because of "property damage" that falls within the scope of exclusions k, l and/or m.

## COUNT VII

100.    Nautilus incorporates by reference paragraphs 1 through 99 of the Complaint as though fully set forth again herein.

101.    HB failed to place Nautilus on notice as soon as practicable of the Third-Party Complaint.

102.    There is no coverage under the Nautilus Policies to the extent Nautilus has been prejudiced by HB's failure to provide timely notice.

103.    Nautilus therefore is entitled to a declaration that it is not obligated to indemnify HB for the claims asserted against it in the Underlying Action by virtue of HB's failure to provide timely notice to Nautilus, which resulted in prejudice to Nautilus.

## COUNT VIII

104.    Nautilus incorporates by reference paragraphs 1 through 103 of the Complaint as though fully set forth again herein.

105.    To the extent that the Complaint in the Underlying Action seeks damages because of "property damage", some or all of the "property damage" is as a result of the design and installation of a stucco wall system.

106.    To the extent that the stucco wall system employed on the Building constitutes an "exterior insulation finishing system" within the meaning of the Nautilus Policies, there is no coverage under those policies based on the EIFS exclusion contained in them.

107.    Nautilus therefore is entitled to a declaration that it is not obligated to indemnify HB under the Nautilus Policies for damages because of "property damage" that falls within the scope of the EIFS exclusion contained in them.

**COUNT IX**

108.    Nautilus incorporates by reference paragraphs 1 through 107 of the Complaint as though fully set forth again herein.

109.    To the extent that the Complaint in the Underlying Action seeks damages because of "property damage", some or all of the "property damage" may have arisen out of work performed by contractors hired by HB, or HB's acts or omissions in connection with the general supervision of such work.

110.    There is no coverage under the Nautilus Policies for damages because of "property damage" arising out of work performed by contractors hired by HB or HB's acts or omissions in connection with the general supervision of such work as such damages fall entirely within the scope of the Contactors' Exclusion in the policies.

111.    Nautilus therefore is entitled to a declaration that it is not obligated to indemnify HB under the Nautilus Policies for damages because of "property damage" that falls within the scope of the Contractors' Exclusion contained in the Nautilus Policies.

## COUNT X

112.    Nautilus incorporates by reference paragraphs 1 through 111 of the Complaint as though fully set forth again herein.

113.    To the extent that the Complaint in the Underlying Action seeks damages because of "property damage", the "property damage" may have arisen out of the rendering of or failure to render professional services by HB.

114.    There is no coverage under the Nautilus Policies for damages because of "property damage" arising out of the rendering of or failure to render "professional services" as defined by the policies as such damages fall entirely within the scope of the professional services exclusions contained in the policies.

115.    Nautilus therefore is entitled to a declaration that it is not obligated to indemnify HB under the Nautilus Policies for damages because of "property damage" that falls within the scope of the professional services exclusions contained in the Nautilus Policies.

## COUNT XI

116.    Nautilus incorporates by reference paragraphs 1 through 115 of the Complaint as though fully set forth again herein.

117.    To the extent that the Complaint in the Underlying Action seeks damages because of "property damage", some or all of the "property damage" arises out of, is related to, caused by or connected with the existence of mold, mildew, fungus, or wet or dry rot.

118.    There is no coverage under the Nautilus Policies for damages because of "property damage" arising out of, related to, caused by or connected with the existence of mold, mildew, fungus, or wet or dry rot as such damages fall entirely within the scope of the mold exclusions contained in the policies.

119.    Nautilus therefore is entitled to a declaration that it is not obligated to indemnify HB under the Nautilus Policies for "property damage" that falls within the scope of the mold exclusions contained in the policies.

## COUNT XII

120.    Nautilus incorporates by reference paragraphs 1 through 119 of the Complaint as though fully set forth again herein.

121.    To the extent that the Complaint in the Underlying Action seeks damages because of "property damage", some or all of the "property damage" may have been due to HB's failure to take appropriate steps to protect an open roof from adverse weather conditions.

122.    There is no coverage under the 2007-08 Nautilus Policy and 2008-09 Nautilus Policy for damages because of "property damage" due to HB's failure to take "appropriate" steps to protect an open roof from "property damage" due to adverse weather conditions as such damages fall entirely within the scope of the Roofing Exclusion in the policies.

123.    Nautilus therefore is entitled to a declaration that it is not obligated to indemnify HB under the 2007-08 Nautilus Policy and 2008-09 Nautilus Policy for "property damage" that falls within the scope of the Roofing Exclusion in the policies.

## PRAYERS FOR RELIEF

**WHEREFORE** the plaintiff, Nautilus Insurance Company, respectfully requests that this Court enter an Order:

a.    As to Count I, that Western World Insurance Company is obligated to defend HB with respect to the Underlying Action on a co-primary basis;

b.    As to Count II, that Western World Insurance Company is obligated to reimburse Nautilus Insurance Company in an amount to be determined for Western World Insurance Company's share of defense costs incurred and paid by Nautilus in the defense of HB in the Underlying Action;

c.     As to Count III, that Nautilus Insurance Company is not obligated to indemnify HB Construction Corp. because the lack of an "occurrence" and/or "property damage";

d.     As to Count IV, that Nautilus Insurance Company is not obligated to indemnify HB Construction Corp. because the lack of "property damage" in the Nautilus Policies periods;

e.     As to Count V, that Nautilus Insurance Company is not obligated to indemnify HB Construction Corp. because the alleged "property damage" claimed in the Underlying Action fall within the scope of ongoing operations exclusions set forth in provisions j(5) and j(6) of the Nautilus Policies;

f.     As to Count VI, that Nautilus Insurance Company is not obligated to indemnify HB Construction Corp. because the alleged "property damage" claimed in the Underlying Action falls within the scope of the "your work", "your product", and/or the impaired property exclusions set forth in provisions k, l and m of the Nautilus Policies;

g.     As to Count VII, that Nautilus Insurance Company is not obligated to indemnify HB Construction Corp. because Nautilus was prejudiced by HB Construction Corp.'s failure to provide notice of the Underlying Action as soon as practicable;

h.     As to Count VIII, that Nautilus Insurance Company is not obligated to indemnify HB Construction Corp. because alleged "property damage" claimed in the Underlying Action falls within the scope of the Exterior Insulation Finishing System Exclusion of the Nautilus Policies;

i.     As to Count IX, that Nautilus Insurance Company is not obligated to indemnify HB Construction Corp. because alleged "property damage" claimed in the Underlying Action falls within the scope of the Contractor-Subcontractor's Exclusion of the Nautilus Policies;

j.     As to Count X, that Nautilus Insurance Company is not obligated to indemnify HB Construction Corp. because alleged "property damage" claimed in the Underlying Action fall within the scope of Professional Services Exclusion of the Nautilus Policies;

k.     As to Count XI, that Nautilus Insurance Company is not obligated to indemnify HB Construction Corp. because alleged "property damage" claimed in the Underlying Action falls within the scope of Microorganism, Biological Organism, Bioaerosols or Organic Contaminants Exclusion of the Nautilus Policies;

l.      As to Count XII, that Nautilus Insurance Company is not obligated to indemnify HB Construction Corp. because alleged "property damage" claimed in the Underlying Action falls within the scope of Roofing Exclusion of the Nautilus Policies;

m.      Awarding Nautilus relief pursuant to G.L. c. 231A, § 5; and

n.      Awarding such other relief this Court deems necessary and proper.

**Nautilus demands trial by jury on all issues so triable.**

Respectfully submitted,
Plaintiff,
NAUTILUS INSURANCE COMPANY,
By its attorneys,


        /s/ Brian P. McDonough
Brian P. McDonough (BBO No. 637999)
**ZELLE MCDONOUGH & COHEN LLP**
101 Federal Street, 14th Floor
Boston, MA 02114
Tel:  (617) 742-6520
Fax:  (617) 742-1393
bmcdonough@zelmcd.com

Dated:  July 1, 2016